**U. S. TRUCK SALES CO., a corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 12454.**

United States Court of Appeals Sixth Circuit.

Jan. 23, 1956.

David Cobb, Washington, D. C., argued, A. P. Annan, Cleveland, Ohio, Cobb & Weissbrodt, Washington, D. C., on the brief, for appellant.

I. Henry Kutz, Washington, D. C., argued, H. Brian Holland, Ellis N. Slack, A. F. Prescott, Marvin W. Weinstein, Washington, D. C., Sumner Canary, U. S. Atty., Cleveland, Ohio, on the brief, for appellee.

Before SIMONS, Chief Judge, ALLEN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellant, U. S. Truck Sales Company, brought this action in the District Court to recover federal excise taxes, alleged to have been erroneously assessed and collected from it under the provisions of Section 3403 of the Internal Revenue Code, 1939, 26 U.S.C.A. § 3403, on sales of secondhand automobile trucks.

Following the filing of an answer by the appellee, the appellant filed a motion for summary judgment, supported by affidavits. The Government filed a motion for summary judgment in its favor. The facts were later stipulated. The District Judge overruled the motion of the appellant, sustained the motion of the appellee, and entered judgment dismissing the complaint, from which this appeal was taken. U. S. Truck Sales Co. v. United States, D.C., 129 F.Supp. 141.

The material facts are as follows: Prior to June 1, 1944, the White Motor Company manufactured in the United States certain 6-ton White prime mover trucks which it sold to the United States. Since the trucks were shipped from the United States to Europe, where they were used by the United States military forces, the sales were exempt from Manufacturers' Excise Taxes. Section 3442(3) Internal Revenue Code, 1939, 26 U.S.C.A. § 3442(3), exempts sales of

trucks for the exclusive use of the United States or any State or territory thereof. The White Motor Company accordingly paid no Manufacturers' Excise Tax on these sales of trucks. In January 1951, the trucks were sold in Germany by a military surplus disposal agency of the United States to a Joint Venture, of which the appellant, an Ohio corporation, was a member. At the time of this purchase the trucks had been used for military purposes and were in a worn condition.

The Joint Venture, immediately after purchase of these trucks, imported them into the United States, where it sold the trucks and parts taken from them in an "as is" or "used" condition. These sales were made in June through October of 1951. The Joint Venture did not charge to, or collect from, any of the purchasers any federal tax upon the sales. Demand was made by the Collector of Internal Revenue upon the Joint Venture for the payment of the Manufacturers' Excise Tax on these sales in the amount of $1,-979.28. The appellant paid $494.82, being one-fourth of the amount demanded, and thereafter filed its claim for refund, which was disallowed. This action followed.

Section 3403 of the Internal Revenue Code of 1939, under which the tax was assessed and collected, provides in part as follows: "There shall be imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold: (a) Automobile truck chassis, automobile truck bodies, * * *. A sale of an automobile truck * * * shall, for the purposes of this subsection, be considered to be a sale of the chassis and of the body." The specified rate at the time of the sales was 5%, which was on November 1, 1951 raised to 8%, and on April 1, 1955 reduced to 5%.

Since the appellant was an importer, a strict, literal reading of the statute makes the sales taxable. However, from 1937 to September 3, 1951, the United States did not collect this tax on sales by importers of secondhand trucks originally manufactured and sold in the United States. This construction of the statute and administrative practice followed a Sales Tax Ruling of the Bureau of Internal Revenue in 1937 known as S.T. 867, which was issued after, and put into effect its construction of, the decision of the Supreme Court in Indian Motorcycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277. It clarified and modified S. T. 514 which related to the taxability of sales of secondhand motorcycles by a manufacturer who accepted them as trade-ins on new motorcycles. It pointed out that the language in S.T. 514 made no distinction between original and successive sales and pointed out that from a practical standpoint Congress intended to do no more than tax the first sale in the United States, as indicated by the language of the opinion of the Supreme Court in the Indian Motorcycle Co. case. The ruling closed with the following statement:

"In view of the foregoing, it is held that, unless the used motorcycle accepted as a trade-in is so altered or rebuilt prior to its use or resale by the manufacturer or producer as to lose its identity, no tax other than that imposed upon the original sale attaches with respect thereto, irrespective of the number of times it is subsequently used or resold by the original or any other manufacturer or producer. In other words, payment, without credit or refund, of the tax on one use or sale establishes immunity with respect to subsequent use or resale, provided no change of identity has been effected prior to such use or resale. In determining the taxability of a subsequent use or sale, an original sale which is tax exempt has the same effect as an original tax-paid sale. S.T. 514, supra, is modified accordingly."

Under this construction of the statute and this Sales Tax ruling, the Bureau, for a period of fourteen years thereafter, did not collect a tax on sales by the manu-

facturer of a secondhand or used truck or on sales by the importer of a secondhand or used truck originally manufactured and sold in the United States. The controversy in the present case was created when the Bureau issued a later sales tax ruling on September 3, 1951, known as S.T. 938. S.T. 938 stated that advice had been requested whether Manufacturers' Excise Taxes were applicable to sales in the United States by the importer of articles named therein which had previously been shipped out of the United States tax-free, the articles in question being surplus property disposed of by the United States in a foreign country to a person who later sold them in the United States. It made the following ruling: "It is held that the sale in the United States by the *importer* of any of the articles named in Subchapter A of Chapter 29 of the Code, which had previously been shipped out of the United States tax-free under any of the sections of the Code authorizing exemption, constitutes a taxable sale of the articles with respect to which the *importer* is liable for tax, regardless of the manner in which the articles were disposed of in the foreign country." (Emphasis added.) It pointed out that in S.T. 867 the question involved the taxability of successive sales of a taxable article by the *manufacturer* or producer thereof subsequent to his original sale, whereas in the situation involved in S.T. 938 the question related to the taxability of the sale of a taxable article by the *importer* thereof, subsequent to an original exempt sale of the article by the *manufacturer* thereof. It closed by stating—"To the extent that certain statements in S.T. 687 may be regarded as inconsistent with the foregoing, they are modified to conform thereto."

■ The taxes in question were collected under the ruling in S.T. 938. It clearly covers the transactions in the present case. Appellant contends that S.T. 938 is not a correct ruling as to the applicability of Section 3403 Internal Revenue Code, in that it erroneously enlarges the scope of the Manufacturers' Excise Tax. The ruling can not change the statute. If it is not a correct construction of Section 3403 Internal Revenue Code, it should be disregarded. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528; Bartels v. Birmingham, 332 U.S. 126, 132, 67 S.Ct. 1547, 91 L.Ed. 1947.

In support of its contention that S.T. 938 is erroneous and invalid, appellant relies principally upon the opinion of the Supreme Court in Indian Motorcycle Co. v. United States, supra, 283 U.S. 570, 51 S.Ct. 602. In that case the Supreme Court was construing Section 600 of the Revenue Act of 1924, which is the predecessor to the Manufacturers' Excise Tax involved in this case and not materially different in its wording. The question involved was not the same question which is involved in the present case, but in making its decision the Supreme Court discussed the nature and characteristics of the tax. It pointed out that it was an excise tax imposed on the sale of the article involved. The opinion analyzed it as follows:

"We think it is laid on the sale, and on that alone. It is levied as of the time of sale and is measured according to the price obtained by the sale. It is not laid on all sales, but only on first or initial sales—those by the manufacturer, producer or importer. Subsequent sales, as where purchasers at first sales resell, are not taxed."

Appellee contends that the foregoing language and views are dicta and not controlling on the decision in this case. Nevertheless, its general analysis of the tax in question carries weight. In several cases since then the case has been cited in support of the ruling that the statute levies a tax on only the first or initial sale. White Motor Co. v. United States, 3 F.Supp. 635, 639, 77 Ct.Cl. 752; Indian Motorcycle Co. v. United States, 9 F. Supp. 608, 610, 80 Ct.Cl. 594; Charles Peckat Mfg. Co. v. Jarecki, 7 Cir., 196 F. 2d 849, 851. In Broad Motors Co. v. Smith, D.C.E.D.Pa., 86 F.Supp. 4, at page 6, the Court construed Sec. 3403 as fol-

lows: "The levying of such taxes apply without exception to 'new articles.' That is, these taxes apply to the first sale of a taxable article by the manufacturer, producer, or importer thereof. These taxes have no application to 'used' or 'second-hand articles' even though the 'used' or 'second-hand articles' may be sold by the manufacturer, producer or importer, who had made the taxable sale of the original article. Indian Motorcycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277; S.T. 867, * * *."

The ruling of the Court of Claims in Lupfer & Pemick v. United States, 66 Ct. Cl. 134, certiorari denied 278 U.S. 643, 49 S.Ct. 79, 73 L.Ed. 557, supports the position of the appellee under facts very similar to those in this case. But that case was decided before Indian Motorcycle Co. v. United States, supra, which the same court has cited in the two opinions hereinabove referred to since its earlier ruling in Lupfer v. United States.

The Government, in fact, still follows the construction given to the statute in Indian Motorcycle Co. v. United States, supra, in so far as manufacturers and producers are concerned. The tax is not collected on resales by them after the trucks have been reacquired in the United States and are sold as secondhand articles. But by S.T. 938 it is attempting to tax the sale of a secondhand truck by one who brings it back to the United States after its original sale in the United States and shipment to a foreign country.

■ We agree with the construction given to the statute by the Supreme Court in Indian Motorcycle Co. v. United States, supra, that the tax is an excise tax and imposed only on the initial sale in the United States. The tax is not imposed on the second sale in the United States of the same article. This is also the construction given to the statute by Congress in 1951 when it considered increasing the excise tax rate from five to eight percent. The Committee reports of both the House and Senate stated that the tax was not imposed on secondhand cars. Since secondhand cars in a large measure represented purchases made by the lower income groups, the reports pointed out that the tax increase would not bear heavily on those groups. House Report No. 586, June 18, 1951 and Senate Report No. 781, September 18, 1951, Pages 1826 and 2073, U. S. Code Congressional and Administrative Service, 82nd Congress, 1st Session, 1951.

If it is the second sale in the United States that is exempt from the tax, it should make no difference by whom the second sale is made. We find nothing in the statute justifying the construction that the second sale is exempt when made by certain persons, but taxable when made by others. The statute uses the words "manufacturer, producer, or importer" in a collective sense, without indicating any difference in tax liability between them. In discussing the requirement in the statute that the tax be paid by "the manufacturer, producer, or importer," the Supreme Court said in Indian Motorcycle Co. v. United States, supra, " * * * we think this requirement is intended to be no more than a comprehensive and convenient mode of reaching all first or initial sales."

To construe the statute as contended for by the Government would require either a tax on the second sale in the United States, which we have indicated was not its purpose, or a tax based on importation. The Supreme Court also rejected this alternative. Referring to the use of the word "importer," it pointed out that it was used in conjunction with "manufacturer" and "producer" for the purpose of covering all initial sales and did not "reflect a purpose to base the tax in any way on manufacture, production, or importation;" that importation, as such, already was otherwise taxed; and that in its opinion "the words relied on fall short of expressing a purpose to subject it to a further tax." On the other hand, the purpose of the statute to tax only the first sale in the United States is carried out by construing the word "im-

porter" as one who imports a taxable article which was manufactured and initially sold outside of the United States and so not subject to the taxing statute until imported and sold for the first time in the United States. In our opinion, that is the proper construction to be given to the statute.

This conclusion is consistent with the administrative interpretation given to the statute by the Treasury Department for a period of approximately fourteen years. Appellee correctly points out that administrative interpretation based on certain rulings of less dignity than Regulations and Treasury Decisions is not to be accorded the weight given to Regulations. Higgins v. Commissioner, 312 U.S. 212, 215–216, 61 S.Ct. 475, 85 L.Ed. 783; Helvering v. New York Trust Co., 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361. Even if the administrative interpretation has been long in force, it does not prevent the promulgation of a regulation changing for the future the earlier practice where the new regulation comports with the plain meaning of the statute. American Chicle Co. v. United States, 316 U.S. 450, 455, 62 S.Ct. 1144, 86 L.Ed. 1591; Langstaff v. Lucas, D.C., 9 F.2d 691, 693, affirmed 6 Cir., 13 F.2d 1022. However, interpretation of a statute in light of a contemporaneous Supreme Court decision by the agency charged with its enforcement, which is adhered to over a long period of time without challenge by the Government in the courts, is entitled to great weight. United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Boutell v. Walling, 327 U.S. 463, 470–471, 66 S.Ct. 631, 90 L.Ed. 786; Walling v. Wall Wire Products Co., 6 Cir., 161 F.2d 470, 475, certiorari denied 331 U.S. 828, 67 S. Ct. 1351, 91 L.Ed. 1843; Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191, 193. The cogent reasons which are necessary to change such an interpretation are not disclosed by the record. Logan v. Davis, 233 U.S. 613, 627, 34 S.Ct. 685, 58 L.Ed. 1121. The new ruling contained in S.T. 938 has been promptly challenged and

has not acquired any seasoned or settled administrative practice. Davies Warehouse Co. v. Bowles, 321 U.S. 144, 156, 64 S.Ct. 474, 88 L.Ed. 635.

The judgment is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein.